789 So.2d 639 (2001)
STATE of Louisiana
v.
Henry TEMPLE.
No. 2000-K-2183.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 2001.
*641 Harry F. Connick, District Attorney of Orleans Parish, Sanem Ozdural, Assistant District Attorney, Leslie Christopher, Assistant District Attorney, New Orleans, Counsel for the State of Louisiana/Relator.
David F. Craig, Jr., New Orleans, Counsel for Defendant/Respondent.
Court composed of Chief Judge WILLIAM H. BYRNES III, Judge STEVEN R. PLOTKIN, Judge MAX N. TOBIAS, Jr.
TOBIAS, Judge.
The State's writ application is granted to review the State's argument that the trial court erred in resentencing the defendant, Henry Temple. For the following reasons, we vacate the sentence and remand this matter to the trial court to permit the defendant an opportunity to withdraw his guilty plea.
After a bench trial, Temple was found guilty of possession of cocaine, and he admitted to being a multiple offender, thereby pleading guilty to the multiple bill. He was sentenced to thirty months at hard labor with credit for time served from the date of his arrest. The trial court recommended Temple-for the Blue Waters Program.[1] The sentence was made executory on 9 June 1999. On 10 September 1999, the trial court amended the sentence to recommend Temple for the Criminal Sheriff's About Face Program[2] or the Department of Public Safety and Corrections ("DPSC") Impact Program. On 27 April *642 2000, a status hearing was held and it was noted on the record that Temple completed the About Face Program. The docket master shows that on 3 May 2000, the trial court informed Temple that he was eligible for parole and should contact the appropriate agency, which is the Board of Parole, through his attorney.
On 26 June 2000, Temple filed a motion to reconsider sentence. The trial court amended the 2 June 1999 sentence to reflect that Temple was sentenced under La. R.S. 13:5301 and La.C.Cr.P. arts. 822 and 881 to thirty months at hard labor with credit for time served, with fifteen months suspended. The trial court placed Temple on five years of active probation, setting as a condition that Temple participate in drug court.[3]
At the 29 June 2000 hearing, Temple's attorney stated:
... the basis for the motion to reconsider did not evidence itself until very recently; namely, on June 14 when Mr. Temple became eligible for parole and was not paroled, because of some glitch in the system. If Your Honor will recall, back in, I believe, June of 1999, Your Honor sentenced Mr. Temple to thirty months on a double bill for simple possession of cocaine and recommended the Impact Program for Mr. Temple. You also gave him time within which to surrender himself so that he could, in effect, bypass Parish Prison in Orleans Parish and serve his sentence in the Department of Corrections, Mr. Temple, in fact, did go to Hunt Correctional Institute and attempted to surrender himself on the day that he was told to do so by the Court. They would not accept him at Hunt, and told him to go to Parish Prison here in Orleans Parish and surrender himself there, which he did in a timely fashion. Since that time, again, the Court recommended the Impact Program. But contrary to that recommendation, Sheriff Foti put Mr. Temple in what is called the About Face program, which is a very similar program. As I understand them, they are both like boot camps. Mr. Temple has completed that now. He went through it. He did the program and was expecting to be released upon completion of that program as he would have been from the Department of Corrections Impact Program. However, he is still languishing in jail. His wife is very anxious to have him back. They were given assurances by myself that he would have been out of jail by now if he successfully *643 completed the Impact program. But since he did not go to the Impact Program, because he was unable to do so, because Foti kept him here, Sheriff Foti [sic], he was only able to complete the About Face Program. Again, he did complete program. He has not been released. He is not scheduled for release until next year some time, although he is now eligible for parole.
In the present case, Temple's attorney stated in court that Temple became eligible for parole on 14 June 2000. Counsel noted that the trial court had recommended Temple for the Impact Program and had given Temple time to surrender in order to bypass Orleans Parish Prison ("OPP") and to serve his sentence in the DPSC. Temple attempted to surrender at Hunt Correctional Institute and was told that he had to surrender to OPP despite the trial court's recommendation. Temple completed the About Face Program in OPP. After sentencing in some cases where the trial court finds that the defendant's guilty pleas was not freely, voluntarily or intelligently entered or that the plea is constitutionally infirm, a trial court is authorized to allow a defendant to withdraw his guilty plea. In the present case, according to his attorney, Temple was given his attorney's assurances that he would have been out of jail if he successfully completed the Impact Program. Contrary to the trial court's original recommendation, Temple served his sentence in Orleans Parish Prison and he completed the About Face Program, which is the equivalent of the Impact Program in DPSC.
The About Face Program is an intensive incarceration program that was established by the Orleans Parish Criminal Sheriff pursuant to La. R.S. 15:574.5. La. R.S. 15:574.5 provides:
A. An offender sentenced to the custody of the Department of Public Safety and Corrections but held by the sheriff of an eligible parish, as defined in Subsection E, and who is otherwise eligible for the intensive incarceration and parole supervision program of the department as provided for in R.S. 15:574.4, may be considered for an intensive incarceration program administered by the sheriff of that parish if all the following conditions are met:
(1) The offender is sentenced to be committed to the department to serve seven years or less.
(2) The court at sentencing recommends that the offender be considered for participation in an intensive incarceration and parole supervision program.
(3) The sheriff's office of the parish finds, after an evaluation, that the offender is particularly likely to respond affirmatively to participation in such a program.
(4) The offender voluntarily enrolls in such a program after having been advised by the sheriff's office of the rules and regulations governing participation in such a program.
B. The provisions of the intensive incarceration program of the department as set forth in R.S. 15:574.4(A) and Code of Criminal Procedure Article 901.1 shall apply to any intensive incarceration program administered by the sheriff of any eligible parish except for the following:
(1) The duration of an intensive incarceration program shall not be less than ninety nor more than one hundred eighty calendar days.
(2) The participating offender shall be evaluated by the program staff of the sheriff conducting the program on a continual basis throughout the entire period of intensive incarceration. The evaluation shall include the offender's performance *644 while incarcerated, the likelihood of successful adjustment on parole, and other factors deemed relevant by the Board of Parole and the program staff. The evaluation shall provide the basis for recommendations by the sheriff's office to the Board of Parole upon the offender's successful completion of any intensive incarceration program. Violation of any institutional or program rules or regulations may subject the participant to removal from an intensive incarceration program.
(3) Upon completion of any intensive incarceration program, the Board of Parole shall review the case of the offender and recommend that the offender be released on intensive parole supervision or that the offender serve the remainder of his sentence as provided by law.
C. Notwithstanding the provisions of R.S. 15:574.4(A)(1), offenders who have successfully completed an intensive incarceration program as provided for in this Section shall be eligible for intensive parole supervision as provided for in R.S. 15:574.4(A)(2).
D. In the event an offender sentenced to be committed to the custody of the department participates in an intensive incarceration program of any eligible parish, the sheriff's office shall be reimbursed by the department for his participation in the program in the amount appropriated by the legislature.
E. As used in this Section, "eligible parish" means a parish with a population of five hundred thousand persons as determined by the latest United States census.
We take judicial notice pursuant to La. C.E. art. 201 that the population of Orleans Parish was, following the 1990 United States census, less than 500,000 persons. The 2000 United States census similarly shows that the population of Orleans Parish remains under 500,000 persons.
In Kimball v. Allstate Ins. Co, 97-2885, 97-2956 (La.4/14/98), 712 So.2d 46, the Louisiana Supreme Court, in discussing the 1974 Louisiana Constitution's prohibition against local and special laws set forth in Article III, Sections 12 and 13, stated:
["A] law may be a general law even though limited to one locality if it is general in its terms and its coverage can extend to other areas should the requisite criteria exist there as well or if its operation is limited to a locality through the effect of a reasonable classification such as population, size or physical characteristics and not solely through the specific designation of a certain parish or parishes.... ["] [Citations omitted] ["A] general law need not apply to every local government within the state; it may confine its coverage to a class or subset of local governments so long as the law applies to all members of the class and the method of classification the law uses is reasonable.....["] [Citations omitted]
* * *
In sum, a law will be considered local or special, and therefore subject to the requirements of La. Const. Art. III, §§ 12 and 13, where its restrictions can affect only a portion of the citizens (special) or a fraction of the property (local) embraced within the created classification, [citation omitted]... and where there is no reasonable basis for the creation of the classification or substantial difference between the class created and the subjects excluded justifying the exclusion.... [Citation omitted]. In contradistinction to the local or special law, a general law is one which operates equally and uniformly upon all persons brought within the relations and circumstances *645 for which it provides or operates equally upon all of a designated class which has been founded upon a reasonable classification.
Id. at p. 5 and 7, 712 So.2d at pp. 51-52.
Accordingly, we find that the Orleans Parish Criminal Sheriff's About Face Program currently is not sanctioned by law and has not been sanctioned since the promulgation of the 1990 United States census in the early 1990's because La. R.S. 15:574.5 E limits the application of La. R.S. 15:574.5 to eligible parishes with a population of 500,000. (If the statute had stated that it applied only to Orleans Parish, it would be a special law requiring special procedures for enactment.)
Even if La. R.S. 15:574.5 were a validly extant program, La. R.S. 15:574.5B(3) still requires the Board of Parole to review the case of the offender and determine whether "the offender be released on intensive parole supervision or that the offender serve the remainder of his sentence as provided by law."
Under La. R.S. 15:574.4, the DPSC has the authority, but is not required, to recognize and accept a person's participation in an intensive incarceration program. But the DPSC is not required to recognize the Orleans Parish About Face Program. Further, it is within the discretion of the Board of Parole to "review the case of the offender and recommend either that the offender be released on intensive parole supervision or that the offender serve the remainder of his sentence as provided by law." La. R.S. 15:574.4A(2)(h). The offender is not entitled to an automatic release, resentence, or other relief merely by his or her completion of an intensive incarceration program.
In the present case, the assistant district attorney was present at the 29 June 2000 hearing when the trial court stated:
Mr. Temple, I have discussed it with your attorney and the State, and I am not quite sure of what I am doing in terms of an absolute legality. I am sure of in terms of the rightness of it; that is, it just seems to me that in terms of what would be fair under all circumstances and equitable, is to give you, in essence, what should have happened with you, had the system worked in the way it was supposed to work. As I understand it, once I sentenced you to the Department of Corrections and sentenced you to the Impact or Intensive Incarceration Program in the Department of Corrections, that should have generated your placement in the same and your placement in the their program. And upon completion of their program, your placement in a parole situation. Intensive parole is what it would have been. But the fact is, though, that didn't happen because of the way the system works only in Orleans Parish, in that the Sheriff maintains individuals in the Parish Prison, because, of course, there's lots of space here. So we maintain individuals in the Parish Prison. They are never transferred into the custody of the Department of Corrections; and, therefore, they cannot receive, in essence, if not benefit of the sentence imposed. They can't receive the same because of how they are treated in Orleans Parish. It just seems that the Henry Temples of the world ought to be treated the same as they would be treated elsewhere had he not been sentenced in Orleans Parish.
The trial court misstated the law. A trial court only recommends to the DPSC that a person be placed in an intensive incarceration program. The DPSC (or, when La. R.S. 15:574.5 was a validly extant program, the Orleans Parish Criminal Sheriff) determines whether a person should be actually placed in an intensive *646 incarceration program. If the DPSC (or the Sheriff) denies the person entry into the program, the DPSC is required to notify the sentencing court,
and based upon the court's order, shall either return the offender to court for resentencing in accordance with the provisions of the Code of Criminal Procedure Article 881.1 or return the offender to a prison to serve the remainder of his sentence as provided by law.
La. R.S. 15.574.4(A)(2)(g)(i).
La.C.Cr.P. art. 881.1A(1) provides:
Within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
We understand this provision to permit an offender to file a motion to reconsider a sentence beyond thirty days if the trial court at the time of imposition of the sentence specifically grants on the record an offender a longer period of time to file a motion to reconsider his sentence. We further understand this to require the trial court to set a date certain or a date that may be objectively determined if the trial court wishes to extend the delay beyond the statutory thirty days. If the trial court granted an indefinite period within which to file a motion to reconsider the sentence, until the motion is filed and acted upon, a defendant would be precluded from appealing his conviction and sentence because a conviction without a final sentence is a non-appealable judgment.
In addition, the trial court has no authority to amend a sentence at hard labor after the execution of that sentence. La. C.Cr.P. art. 881 and 881.1.
La.C.Cr.P. art. 881 provides, in pertinent part:
A. Although the sentence imposed is legal in every respect, the court may amend or change the sentence within the legal limits of its discretion, prior to the beginning of the execution of the sentence.
B. (1) After commencement of execution of the sentence, in felony cases in which the defendant has been sentenced to imprisonment without hard labor and in misdemeanor cases, the sentencing judge may reduce the sentence or may amend the sentence to place the defendant on supervised probation. Should the court consider any motion amending or changing the sentencing imposed, either prior to or after execution of the sentence, the district attorney shall be notified and, if such motion is filed by the defendant, if shall be tried contradictorily with the district attorney, unless the district attorney waives such contradictory hearing.
Our review of the record in this case demonstrates that the defendant entered his guilty plea believing that if he successfully completed an intensive incarceration program he would automatically be entitled to be released on intensive parole supervision upon his compliance with the restrictions imposed by the provisions of La. R.S. 15:574.4(A)(2)(h). Such was an error of fact and law.
That is, because the defendant was partially induced to plead guilty based upon his attorney's advice and the trial court's agreement (based upon the trial court's misunderstanding of the manner in which completion of an intensive incarceration program affected a sentence), the defendant's guilty plea was not entered knowingly and intelligently.
As noted by this court in State v. Hunter, 95-1842 p. 2 (La.App. 4 Cir. 9/28/95), 662 So.2d 67, 68:

*647 When a guilty plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495 [30 L.Ed.2d 427] (1971); State v. Redfearn, 441 So.2d 200 (La.1983). Even if there was no plea bargain with the State, if the defendant justifiably believed there was, and pled guilty in part because of that justifiable belief, the guilty plea was not knowingly made. In such a case the plea must be set aside and defendant allowed to plead again. State v. Hayes, 423 So.2d 1111 (La. 1982); State ex rel. Lafleur [v. Donnelly], 416 So.2d 82 (La.1982).
We understand this rule to apply to a plea entered with the promise of the court. Because it appears that the defendant's plea was entirely predicated upon his release, subject to intensive parole supervision, once he completed an intensive incarceration program, we find his plea was involuntary.[4] We are required, therefore, to remand the matter to the trial court to allow the defendant the opportunity to withdraw his guilty plea if he so chooses.[5]
We agree that when the defendant was not accepted into the Impact Program of the DPSC, the trial court was permitted to resentence the defendant. It did so by the defendant ultimately being placed in the About Face Program. Once the defendant commenced his sentence, the trial court was prohibited by La.C.Cr.P. art. 881 from changing the sentence.
For the foregoing reasons, we vacate the sentence and remand this matter to the trial court for the purpose of permitting the defendant an opportunity to withdraw his guilty plea, and to proceed thereafter in accordance with law.
WRIT GRANTED; SENTENCE VACATED; REMANDED.
BYRNES, J., concurs in part and dissents in part.
BYRNES, Judge, concurring in part and dissenting in part.
I agree with the majority that Henry Temple's multiple bill guilty plea was not voluntarily or intelligently entered. I respectfully dissent in part based on my conclusion that the trial court already properly resentenced Temple.
La. R.S. 14.3 provides:
The articles of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision. [Emphasis added.]
Any doubt as to the extent of the coverage of a criminal statute must be decided in favor of the accused. State v. Carr, 99-2209 (La.5/26/00), 761 So.2d 1271; State v. Burns, 29,632 (La.App. 2 Cir. 9/24/97), 699 So.2d 1179.
*648 Generally, when a guilty plea is invalid, the sentence is vacated, and the case is set for trial. See State v. Galliano, 396 So.2d 1288, 1289 (La.1981); State v. Lewis, 421 So.2d 224 (La.1982); State v. Smith, 406 So.2d 1314 (La.1981); State v. Morris, 98-2684 (La.App. 4 Cir. 3/10/99), 729 So.2d 1141, writ not considered, 99-1025 (La.4/30/99), 741 So.2d 6.
In State v. Smith, supra, the Louisiana Supreme Court held that where the accused himself requested through post-conviction motion that his guilty plea be withdrawn in accordance with the terms of a pre-plea agreement, the trial court may properly withdraw the former plea and vacate the sentence. Following conviction after a trial, the trial court may impose a greater sentence than was imposed upon the guilty plea without violating double jeopardy. The trial court has the option to impose a sentence that he believes is just if the defendant is found guilty.
In the present case, considering that Temple already served the time that he thought he would receive and what would have occurred if he had been placed in the Department of Corrections under its Blue Waters program as the trial court originally recommended, in the interest of justice, I would affirm the trial court's new sentence of June 29, 2000. The trial court suspended the remainder of Temple's sentence but put Temple on five years of active probation including enrollment and placement for completion in the Court's Drug Court Program.
The trial court stated:
... Now, Mr. Temple, the Court's Drug Court Program meets here, the next time is Thursday morning. Mr. Temple, let me explain something to you, Mr. Temple. You are about to be one, placed in a program that is an intensive as anything you had to do in About Face, but again, more so. Let me tell you something right now. I am going to release you from jail. You have to come. You fail to come, you fail to show, you're going go to jail. We are going to drug-test you. If you come loaded, you are going to go to jail. You're going to go to an intensive drug treatment program. If you fail to participate in the same, you are going to go to jail. After the intensive portion of your drug treatment is complete, you will still be in drug treatment, just not in an intensive fashion. If you fail to participate, you are going to go to jail. You are also going to be required to work, go to school, both. If you fail to do so, you are going to jail. For some, and those some tell me that it is in some instances easier for them to go to jail in the beginning, instead of going to this program and having to put up with me and all that program entails....
The trial court's June 29, 2000 sentence is equitable where Temple has already completed the intensive incarceration in the About Face Program. The trial court's sentence of June 29, 2000 imposed a greater sentence than the original sentence because the trial court placed Temple in the intensive drug court program after he completed the intensive incarceration under the About Face Program.
To prevent a miscarriage of justice, the new sentence imposed by the trial court on June 29, 2000 is appropriate and just under the circumstances of this case. Temple should receive the same new sentence as imposed by the trial judge, which the trial court has the discretion to pronounce, if the case were remanded, if Temple were to withdraw his guilty plea, and if Temple were found guilty. The trial court has already reviewed Temple's case and has imposed a new sentence. It is unnecessary to remand this case where the trial court's sentence is just.
*649 Accordingly, I would deny the State's writ application.
NOTES
[1] La. R.S. 15:574.4 provides the eligibility for programs of intensive incarceration and parole supervision by the State Department of Public Safety and Corrections. The State programs of intensive incarceration are known by various names, including the Blue Waters Program and the Impact Program.
[2] La. R.S. 15:574.5 provides for the eligibility for intensive incarceration and parole supervision of persons held by sheriffs in eligible parishes. In Orleans Parish, the Sheriff's intensive incarceration program is called About Face Program.
[3] The Louisiana legislature provided for a drug program to facilitate the creation of alcohol and drug treatment divisions in the various district courts under La. R.S. 13:5301 et seq. La. R .S. 13:5304 provides that each district court may designate as a drug division one or more divisions to which alcohol- or drug-related offenses are assigned and may establish a probation program to be administered by the presiding judge, judges, or an employee designated by the court.

The judge decides the terms of each probation agreement. The defendant must plead guilty to the charge to be eligible and the defendant must agree to the drug division probation program.
Under La. R.S. 13:5304 B(1)(f), if the defendant completes the drug division probation program and successfully completes all other requirements, the conviction may be set aside and the prosecution dismissed in accordance with the provisions of La.C.C.r.P. arts. 893 and 894. The successful completion of the drug program may result in the discharge of the defendant from continued supervision.
If the defendant does not successfully complete the drug division probation program, the judge may revoke the probation and impose sentence, or the judge may revoke the probation and order the defendant to serve the sentence previously imposed and suspended, or impose any sanction provided in La. C.Cr.P.art. 900, extend the probation and order the defendant to continue treatment for an additional period, or both.
[4] We note that the defendant received the minimum sentence he could obtain as a multiple offender regardless of whether he enter a plea of guilty or went to trial on the multiple bill.
[5] Generally, when a guilty plea is invalid, the sentence is vacated, and the case set for trial. State v. Smith, 406 So.2d 1314 (La.1981); State ex rel. LaFleur v. Donnelly, 416 So.2d 82 (La.1982). We find that such is the result required in the case at bar for the sentence that the trial court gave the defendant on 29 June 2000 was not procedurally authorized as a matter of law.