JAMES F. McKAY III, Judge.
| STATEMENT OF CASE
By bill of information filed February 28, 2008, the appellant was charged with aggravated burglary. At his arraignment on March 26, 2008, the court ordered a competency hearing. The appellant was found competent on April 3, 2008, and he entered a not guilty plea. On August 21, 2008, a motion for speedy trial was granted; the appellant’s motion for a bond reduction was denied. The district court found probable cause on November 19, 2008 and November 21, 2008. The hearing on the motion to suppress the identification was continued until January 7, 2009, when it was denied. Following a bench trial on April 22, 2009, the appellant was found guilty as charged, and a presentence investigation was ordered. On January 23, 2009, the district court denied appellant’s motion for new trial. After waiving delays, he was sentenced to serve thirty years at hard labor, to run concurrently with any other sentence he may be serving. On July 28, 2009, counsel for the appellant filed a motion to reconsider sentence and motion for appeal. The motion for appeal was granted. There is no evidence of a ruling on the motion to reconsider sentence. A second motion to reconsider sentence was filed by counsel on August 6, 2009. There is no evidence of a ruling on the second [ 2motion to reconsider sentence. Neither motion to reconsider sentence is part of the record.
STATEMENT OF FACT
On February 11, 2008 at approximately 2:00 a.m., Jacqueline Thomas was preparing to go to bed when she heard a loud noise. She kept hearing the noise so she got out of bed to investigate. Ms. Thomas heard several loud knocks coming from her rear door. The door then flew open and the appellant stepped inside. She attempted to escape through the front of the house, but he caught her. The appellant told her that he came to rape her. He removed his shirt and unfastened his pants. His pants fell to his ankles. Ms. Thomas tried to escape again, but he grabbed her wrists. The appellant then told her that he changed his' mind about raping her. Instead, he told her that he wanted to make love to her, and she told him no. The appellant tightened his grip on her wrists when she tried to get loose. Ms. Thomas began talking to the appellant in an attempt to dissuade him from carrying out his threat. He told her his first name and that he had been watching her for a long time. He also told her that no one loved him. She then asked him if he could get something to fix the door. The appellant acquiesced. Before he left, he made her promise not to call the .police, and he apologized.
After the appellant left, Ms. Thomas drove to the Third District Police Station where she called 911 from the parking lot.[1] Officer Watson was en route back to the station when he noticed Ms. Thomas crying hysterically in the parking lot. After speaking with her, he and Ms. Thomas relocated to her home at 3318 DeSaix Boulevard. No one was there but the officer noticed that the rear door was changing *675 on one hinge and that there were wood splinters inside and outside of the house. Ms. Thomas told Officer Watson that the perpetrator was a neighbor that lived a couple of houses down from hers, and she gave the officer his name. Based upon the information provided by Ms. Thomas, an arrest warrant for the appellant was obtained. Detective Callouet executed the warrant later that morning. The appellant was found sleeping in a vehicle that was parked in his mother’s backyard at 3330 DeSaix Boulevard.
On February 19, 2007, Ms. Thomas was asked to come to the police station where she met with Detective Daggs. She was shown a photograph, and she identified the person in the photograph as the appellant.
The appellant testified that he lives with his mother and father. He stated that the first time he met Ms. Thomas, she asked him to carry two boxes into her home. Afterwards they had sex. He also said they were intimate on one other occasion. On the morning of the alleged burglary, he was returning home when he saw Ms. Thomas standing in her doorway. Ms. Thomas made rude comments to him, and he replied with a hand gesture. He proceeded home, but did not have his house keys. After ringing the doorbell twice with no reply, he slept in a vehicle parked in his parent’s backyard. The appellant denied entering Ms. Thomas’ home that night.
The State recalled Ms. Thomas. She avowed that the appellant was never in her home prior to the burglary and that she has never had sex with him.
ERRORS PATENT AND ASSIGNMENTS OF ERROR NUMBERS 2 AND 3
By assignment of error number two, the appellant asserts that the district court erred in failing to rule on the motions to reconsider sentence that were filed on July 28, 2009 and on August 6, 2009. Neither motion is part of the record on Lappeal. The record also fails to reflect a ruling by the district court on either motion.
This Court has previously held that it is procedurally incorrect to review a defendant’s sentence prior to the district court’s ruling on a motion to reconsider sentence. See State v. Ferrand, 2003-1746 (La.App. 4 Cir. 1/14/04), 866 So.2d 322; State v. McQun, 2002-0259 (La.App. 4 Cir. 6/19/02), 828 So.2d 598; State v. Allen, 99-2579 (La.App. 4 Cir. 1/24/01), 781 So.2d 88. As this Court noted in State v. Temple, 2000-2183 (La.App. 4 Cir. 5/16/01), 789 So.2d 639, without a final sentence the conviction is not appealable. However, a trial court’s failure to determine a motion to reconsider sentence does not preclude review of the conviction. State v. Foster, 2002-0256 (La.App. 4 Cir. 9/11/02), 828 So.2d 72.
The appellant avers in his third assignment of error that his sentence is excessive. Accordingly, the appellant’s case is remanded to the district court for a ruling on the motions for reconsideration of sentence, reserving his right to appeal his sentence once the district court has ruled on the motion. As the motions are not part of the record for this Court to review the appellant has thirty (30) days from the date of this opinion in which to re-file the motions to reconsider.
No other errors patent were found.
ASSIGNMENTS OF ERROR NUMBERS 5 AND 6
By these assignments of error, the appellant asserts that the district court erred by denying the motion for new trial and motion for post-verdict judgment of acquittal because the verdict was contrary to the law and the evidence.
*676 When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). 5State v. Marcantel, 2000-1629, p. 8 (La.4/3/02), 815 So.2d 50, 55. Therefore, these assignments of error will be considered first.
The standard for determining a claim of insufficiency of evidence was set forth by the Court in State v. Brown, 2003-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18:
When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court “must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. Neal, 00-0674, (La.6/29/01) 796 So.2d 649, 657 (citing State v. Captville, 448 So.2d 676, 678 (La.1984)).
When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 requires that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” Neal, 796 So.2d at 657. Ultimately, all evidence, both direct and circumstantial must be sufficient under Jackson to prove guilt beyond a reasonable doubt to a rational jury. Id. (citing State v. Rosiere, 488 So.2d 965, 968 (La.1986)).
Based upon the evidence presented at trial, the State had to prove that the appellant’s entry into Ms. Thomas’ home was unauthorized, that he entered her home intending to commit a felony or theft therein, and that he committed a battery upon her while inside her home. La. R.S. 14:60(3).
The appellant does not argue that his entry into the residence was unauthorized. Indeed, the evidence presented at trial shows that the appellant’s entry into Ms. Thomas’ home was unauthorized as evidenced by the splintered door. Also, she specifically testified that she did not give him permission to enter her home. Instead, he first argues that the state failed to prove that he had the requisite intent to rape Ms. Thomas upon entering the |firesidence. He notes that Ms. Thomas did not mention anything about a rape when she made the 911 call or when she spoke to the responding officer, Watson. As noted in State v. Francis, 96-2389, 5 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461:
Intent is a question of fact, but it need not be proved as a fact. It may be inferred from the circumstances. State v. Kahey, 436 So.2d 475 (La.1983); State v. Robinson, 29488, p. 3 (La.App.2d Cir.6/18/97), 697 So.2d 607, 609, writ denied, 97-1845 (La.12/12/97), 704 So.2d 1200. For example, a defendant’s flight from the scene of a crime indicates consciousness of guilt. That is a circumstance from which guilt may be inferred. State v. Bell, 581 So.2d 384, 386 (La.App. 4 Cir.1991).
In Francis, the defendant, who was the victim’s ex-boyfriend, broke down the victim’s door, entered her house, ripped out her phone wires, and hit her several times in the head. The police caught the defendant as he chased the victim out of the house. On appeal of his aggravated burglary conviction, the defendant argued that the state failed to show that he intended to *677 commit a felony or theft after entering. This Court rejected this argument, noting that the victim testified that she had moved to a women’s shelter to avoid the defendant and had only recently returned to her house. This Court found that the evidence of the defendant’s entry and beating was circumstantial evidence of his intent, stating: “The fact that Ms. Wells was able to escape before she was hurt more seriously is of no moment.” Francis at p. 5, 715 So.2d at 461.
Ms. Thomas testified at trial that upon entering her home, the appellant informed her that he came to rape her, and he proceeded to remove his clothing. Throughout the incident, the appellant restrained Ms. Thomas |7by her wrists, and when she attempted to escape, he would tighten his grip. Thus, not only did the appellant voice his intent, intent may also be inferred by the manner in which he entered the residence and prevented her from leaving.
Second, the appellant argues that there was insufficient evidence to prove that he committed a battery. Battery is defined by La. R.S. 14:33 as “the intentional use of force or violence upon the person of another.” His restraint of Ms. Thomas by her wrists is sufficient to show that he committed a battery upon her while inside her home. This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 1
By this assignment of error, the appellant argues that the record fails to show that he knowingly and intelligently waived his right to a trial by jury. He specifically argues that the record fails to show that he was personally advised by the court of his right to a jury trial at either his arraignment on April 3, 2008 or prior to trial.
A defendant charged with an offense other than one punishable by death may knowingly and intelligently waive his right to trial by jury and elect to be tried by the judge. La.C.Cr.P. art. 780(A); State v. Lee, 2001-2082, p. 4 (La.App. 4 Cir. 8/21/02), 826 So.2d 616, 622. The waiver must be express and is never presumed. State v. Santee, 2002-0693, p. 3 (La.App. 4 Cir. 12/4/02), 834 So.2d 533, 534. A waiver of the right to trial by jury is valid only if the defendant acted knowingly and voluntarily. State v. Kahey, 436 So.2d 475, 486 (La.1983); Santee, supra. However, while the trial judge must determine if the defendant’s Injury trial waiver is knowing and intelligent, that determination does not require a Boykin-like colloquy.[2] Santee, supra.
In the instant case, the following colloquy occurred between the trial court and the defense attorney:
THE COURT:
Okay, are you ready for trial?
MR. COUNCIL:
Yes, sir.
THE COURT:
Okay. Send for — jury trial?
MR. COUNCIL:
Judge, may I speak with Mr. Peters and come back?
THE COURT:
Sure.
(Non-related matters are handled.)
MR. COUNCIL:
We waive the jury, Your Honor.
THE COURT:
All right. They are waiving the jury.
This Court has considered what constitutes a knowing and intelligent waiver of *678 the right to trial by jury in several cases and has made it clear that the preferred practice for obtaining a valid waiver of a defendant’s right to trial by jury is “for the trial judge to advise the defendant personally on the record of his right to trial |9by jury and require the defendant to waive the right personally either in writing or by oral statement in open court on the record.” State v. Richardson, 575 So.2d 421, 424 (La.App. 4 Cir. 1/31/91). See also State v. Wolfe, 98-0345 (La.App. 4 Cir. 4/21/99), 738 So.2d 1093, and State v. Abbott, 92-2731 (La.App. 4 Cir. 2/25/94), 634 So.2d 911. However, this Court has also found that a knowing and intelligent waiver of a defendant’s right to a jury trial can be made even if the preferred practice of obtaining such a waiver is not followed. See State v. Santee, 2002-0693 (La.App. 4 Cir. 12/04/02), 834 So.2d 533, where this Court reiterated that “the Louisiana Supreme Court has refused to mandate this method as an absolute rule.” Id. at p. 3, 834 So.2d at 535. Moreover, in both San-tee and Wolfe, this Court held that the defendant’s failure to object when his counsel informed the court that a judge trial had been chosen was to be construed against the defendant in determining the validity of the waiver made while he was present in court.
In State v. Bryant, 2006-1154 (La.App. 4 Cir. 1/10/07), 950 So.2d 37, this Court again noted that both the Supreme Court and this Court have rejected an absolute rule that would require the trial judge to personally inform a defendant of his right to a jury trial. It then found Bryant’s waiver of a jury trial valid where the trial court noted that counsel had advised it that he had chosen to go to trial by judge and asked whether that was correct.
Although the trial court here did not personally advise the appellant of his right to a jury trial, the colloquy shows that the court asked whether this would be a jury trial. Counsel then requested time to confer with the appellant, after which, counsel informed the court that they were waiving the jury. The appellant did not object when counsel informed the court that a jury trial was being waived. Thus, | munder the circumstances, the jury waiver was valid, and this assignment of error lacks merit.[3]
ASSIGNMENT OF ERROR NUMBER 4
By his final assignment of error, the appellant asserts that the district court erred by denying the motion to suppress the identification.
To suppress an identification, a defendant must first prove that the identification procedure was suggestive and that there was a substantial likelihood of mis-identification as a result of the identification procedure. State v. Stovall, 2007-0343, p. 16 (La.App. 4 Cir. 2/06/08), 977 So.2d 1074, 1084, writ denied, 2008-0501 (La.9/26/08), 992 So.2d 984.; State v. Leger, 2005-0011, p. 59 (La.7/10/06), 936 So.2d 108, 151, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007). Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). Even a suggestive, out-of-court identification will be *679 admissible if it is found reliable under the totality of circumstances. State v. Holmes, 2005-1248, p. 6 (La.App. 4 Cir. 5/10/06), 931 So.2d 1157, 1161.
Here, the appellant argues that the identification procedure used in this case was suggestive in that Ms. Thomas was shown only one photograph of a suspect, that of the appellant. This Court has upheld one-photograph identifications where the victims have known their assailants. See State v. Weber, 2002-0618 (La.App. 4 Cir. 12/4/02), 834 So.2d 540; State v. Salone, 93-1635 (La.App. 4 Cir. 1112/28/94), 648 So.2d 494; and State v. Evans, 463 So.2d 673 (La.App. 4 Cir.1985).
Here, the likelihood of misidentification is not present. There is no question that Ms. Thomas knew her assailant as the appellant lived for many years two houses down from her. Also, she provided police with the appellant’s name and address. Thus, even if the single photograph identification procedure utilized was suggestive, it was reliable and admissible under the totality of the circumstances. This assignment of error is without merit.
CONCLUSION
Accordingly, we affirm the appellant’s conviction and remand the matter to the trial court for a ruling on the motions to reconsider sentence, reserving appellant’s right to appeal his sentence once the district court has ruled on his motions. Furthermore, as neither motion to reconsider sentence is part of this record, we grant the appellant thirty (30) days from the date of this opinion in which to re-file his motion to reconsider sentence with the trial court.
CONVICTION AFFIRMED; REMANDED.

. The 911 tape was played after being authenticated by Office Lockett from the Communications Division of the police department.

. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

. Appellant has cited only one case in support of his claim wherein this Court found that counsel's waiving of a jury trial was insufficient to prove a valid waiver. State v. Page, 541 So.2d 409 (La.App. 4 Cir.1989). However, as the State points out, the case is easily distinguished. In Page, this Court specifically noted that the record was devoid of any evidence that counsel advised or consulted with Page prior to waiving the jury or that Page consented to the waiver.