WICKER, J.
Defendant, Brandon Pike, appeals his convictions and sentences for aggravated burglary in violation of La. R.S. 14:60 and second degree battery in violation of La. R.S. 14:31.1. For the following reasons, we affirm defendant's convictions and sentences.
STATEMENT OF THE CASE
On February 17, 2017, the Jefferson Parish District Attorney filed a bill of information charging defendant, Brandon L. Pike, with aggravated burglary of a residence belonging to Shirley Fazande, in violation of La. R.S. 14:60 (count one), and second degree battery of Ms. Fazande, in violation of La. R.S. 14:34.1 (count two). Defendant pled not guilty at his arraignment on February 22, 2017.[1] On February 24, 2018, defendant filed a "Motion to Declare La. C.Cr.P. art. 782(A) and La. Const. Art. I, § 17 Unconstitutional because they Allow for a Nonunanimous Verdict in this Second-Class Case," which the trial court denied on the morning of trial. A one-day trial commenced before a twelve-person jury on February 27, 2018.
*492 The jury found defendant guilty as charged.
On March 15, 2018, defendant filed a motion for new trial and for post-verdict judgment of acquittal. The following day, March 16, 2018, the trial court denied defendant's post-verdict motions and, after a waiver of delays, sentenced defendant to thirty years imprisonment at hard labor on count one and eight years imprisonment at hard labor on count two. The trial judge ordered the sentences to be served consecutively. Defendant's motion to reconsider sentence was denied by the trial court following sentencing. This timely appeal followed.
FACTS
The victim, eighty-four-year-old Shirley Fazande, testified at trial that defendant, Brandon Pike, broke into her home on December 31, 2016, and confronted her in her hallway. She recalled that defendant broke through the front door of her home and was approximately three to four feet away from her when he demanded her money. When she informed defendant that she did not have any money, he pushed her into her bedroom and started "beating [her] in the head," rendering her unconscious. Once she regained consciousness, she was able to call her daughter-in-law for help. When her son and daughter-in-law arrived at her home, she told them that defendant, who lived around the corner, attacked her. The victim explained that she knew defendant from the neighborhood commodity store and testified that she would see him three to four times a week when he would pass in front of her house. The victim further testified that the only item missing from her home was her television. On cross-examination the victim stated that she did not know how long she was "out" but that she recalled the attack happened at night.
Detective Carl Koppeis of the Jefferson Parish Sheriff's Office testified that on December 31, 2016, he reported to 6605 16th Street in Marrero, Louisiana, to investigate an aggravated burglary. Upon his arrival, it appeared that the front door had been kicked open. Based on conversations with the victim, her son (Ronald Fazande), and other individuals at the scene, defendant was developed as a suspect. Detective Koppeis testified that he went to the hospital to speak with the victim, and observed substantial swelling to her face, including her left eye which was swollen shut, and dried blood behind her left ear. He further explained that the victim identified defendant from a photographic lineup.[2] Ms. Fazande also told Detective Koppeis that she knew defendant from the neighborhood commodity store and the neighborhood. A warrant was prepared for defendant's arrest, and upon his arrest, scratches were observed on his hands.
Deborah Fazande, the victim's daughter-in-law, testified that she and her husband, Ronald, were shopping when they received a phone call from the victim asking for help. Because she and Ronald were not home at the time, a neighbor, Russell Goff, was sent to check on the victim until they could get there. Deborah identified several photographs depicting the condition of the victim's home upon their arrival, including damage sustained to the front door frame, kitchen door, and several rooms of the house which had been ransacked. Deborah also noted that the victim's television was missing.
*493 Deborah testified that prior to the incident, the victim was very active, exercising at the fitness center three days a week, volunteering at Ochsner Westbank two days a week, traveling with a ladies social group, and participating in various social activities in the community. However, since the incident, she explained that the victim has been unable to do any of these activities. Deborah also testified that she now helps the victim with her cooking and drives her to therapy as she is no longer able to do so herself.
Russell Goff testified that at around noon on December 31, 2016, he received a phone call to go check on his neighbor, the victim.[3] Upon his arrival, he saw that the front door had been kicked in, the house was in disarray, the television was missing from the bedroom, and the victim was lying on the floor in the den. Russell testified that he gave the victim some juice because she was a diabetic and that once she started drinking the juice, she started to remember what had happened.[4] Russell recalled that at first the victim thought she might have fallen but then when she began to "come through," she told him that she had been attacked and that her assailant was a guy from the neighborhood-a heavy-set, light-skinned African-American man, who worked at the neighborhood commodity store and whom Russell's mother knew.
Russell's mother, Sabrina Knapper, testified that she was on the phone with her son when he went to the victim's house to check on her. Through FaceTime, Sabrina observed that the victim's face was swollen and testified that she was able to hear the victim's description of the perpetrator. Based on the description the victim provided, Sabrina testified that she knew the victim's assailant was defendant, a neighbor "from around the corner," whom she had known for years.
Ronald Fazande, the victim's son, testified that he accompanied his wife Deborah to his mother's house shortly after they received her phone call. He recalled that she was seated in a chair in the den and that her eye was swollen shut with cuts on the back of her neck and ear. He observed that the front door of the house had been kicked in, his mother's room had been torn apart, and her television was missing. Ronald also testified that he heard his mother's description of the perpetrator but did not initially know who she was talking about until Sabrina informed him that it was defendant, whom he recalled seeing in the neighborhood.
DISCUSSION
On appeal, defendant assigns the following errors: (1) the evidence presented at trial was insufficient to support his convictions; (2) the trial court erred in sentencing defendant for aggravated battery rather than aggravated burglary; (3) the consecutive sentences imposed are constitutionally excessive; (4) the convictions for both aggravated burglary and second degree battery constitute double jeopardy; (5) trial counsel was ineffective for failing to raise a double jeopardy claim; and (6) the non-unanimous jury verdict violates the Equal Protection Clause and is unconstitutional. We address each assignment of error in turn:
In his first assignment of error, defendant contends that the evidence presented at trial was insufficient to support his convictions for aggravated burglary and second *494 degree battery, on the sole basis that the State failed to prove his identity as the perpetrator of the crimes.
In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Neal , 00-674 (La. 6/29/01), 796 So.2d 649, 657, cert. denied , 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 provides, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational trier of fact could not have found proof of guilt beyond a reasonable doubt. State v. Baham , 14-653 (La. App. 5 Cir. 3/11/15), 169 So.3d 558, 566, writ denied , 15-0740 (La. 3/24/16), 190 So.3d 1189.
Here, defendant was convicted of aggravated burglary, in violation of La. R.S. 14:60, which required the State to prove the following elements in this case: 1) the unauthorized entering of any inhabited dwelling where a person is present, 2) with the intent to commit a felony or any theft therein, if the offender, 3) commits a battery upon any person while in such place, or in entering or leaving such place; and of second degree battery, in violation of La. R.S. 14:34.1, which is a battery, defined in pertinent part as "the intentional use of force or violence upon the person of another" when the offender intentionally inflicts serious bodily injury. Encompassed within proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Nelson , 14-252 (La. App. 5 Cir. 3/11/15), 169 So.3d 493, 500, writ denied , 15-0685 (La. 2/26/16), 187 So.3d 468. Nonetheless, the testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction. State v. Marshall , 04-3139 (La. 11/29/06), 943 So.2d 362, 369, cert. denied , 552 U.S. 905, 128 S.Ct. 239, 169 L.Ed.2d 179 (2007) ; State v. Harrell , 18-63 (La. App. 5 Cir. 10/17/18), 258 So. 3d 1007, 1011-12 ; State v. Watkins , 13-1248 (La. App. 4 Cir. 8/6/14), 146 So.3d 294, 303 (citing State v. Wells , 10-1338 (La. App. 4 Cir. 3/30/11), 64 So.3d 303, 306 ). The fact-finder's decision concerning the credibility of a witness will not be disturbed unless it is clearly contrary to the evidence. Watkins , supra .
In challenging the sufficiency of the evidence used to convict him of these two offenses, defendant does not contest the sufficiency of the essential statutory elements of the charged crimes; rather, he challenges only the State's evidence presented to prove his identity as the perpetrator. Defendant claims that the victim's identification of him as the perpetrator is not reliable because of: (1) the lack of the victim's ability to view her assailant at the time of the crimes given the fact that the time the crimes occurred and how long the victim was unconscious were both undetermined; (2) the victim's history of diabetes and recent cataract surgery might have affected her ability to accurately view her *495 assailant; (3) the victim's lack of attention based on the testimony that the victim does not "think clearly" when her blood sugar is "off"; (4) the vague and inaccurate description of the assailant provided by the victim; (5) the lack of certainty demonstrated by the victim; and (6) the length of time between the crime and the confrontation after having been repeatedly told by her neighbor, Sabrina, that defendant was the perpetrator. He further contends the photographic lineup was unduly suggestive because it focused solely on defendant, and was presented to the victim at a time when she was injured and not wearing her glasses.
In assessing the reliability of eyewitness identifications when reviewing the sufficiency of the evidence, Louisiana courts apply the five factors set forth by the United States Supreme Court in Manson v. Brathwaite , 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), which are as follows: (1) the opportunity of the witness to view the perpetrator at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the perpetrator; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the identification. State v. Cooper , 12-0174 (La. App. 4 Cir. 7/10/13), 120 So.3d 844, 852, writ denied , 13-1931 (La. 2/28/14), 134 So.3d 1174 (citing State v. Stewart , 04-2219 (La. App. 4 Cir. 6/29/05), 909 So.2d 636, 639, writ denied , 06-0029 (La. 6/2/06), 929 So.2d 1250 ). These five factors are generally applied to determine whether an identification made under suggestive circumstances arranged by the police created a "substantial likelihood of misidentification." Perry v. New Hampshire , 565 U.S. 228, 132 S.Ct. 716, 724-26, 181 L.Ed.2d 694 (2012).
In the present case, the testimony at trial established that the victim was wearing her glasses at the time she observed her assailant standing only three to four feet in front of her in her hallway. The testimony further showed that the first person to enter the victim's home after the incident was her next-door neighbor, Russell. The victim informed Russell that although she could not recall her assailant's name, she recognized him and described him as a heavy-set, light-skinned, African-American man who worked at the neighborhood commodity store and whom his mother (Sabrina) also knew. The victim testified that she not only knew her assailant from the commodity store, but would also see him in the neighborhood three to four times a week when he would pass in front of her house.
Further, there is no evidence to support any allegation of police misconduct related to the photographic lineup. Detective Koppeis recalled that the victim had "no problems" immediately identifying defendant as her assailant from a photographic lineup presented to her. Thus, although Sabrina may have supplied defendant's first name based on the information obtained from the victim, it was the victim herself who provided the detailed description of defendant whom she independently knew from the neighborhood and positively, "immediately" identified from a photographic lineup and at trial. As previously set forth, positive identification by only one witness is sufficient to support a conviction. State v. Williams , 08-272 (La. App. 5 Cir. 12/16/08), 3 So.3d 526, 529, writ denied , 09-0143 (La. 10/16/09), 19 So.3d 470.[5]
*496 Finally, defendant asserts that his identification by the victim should be deemed unreliable based upon her diabetic condition which caused her to be "unbalanced" and unable to "think clearly," requiring the administration of juice to normalize her blood sugar. However, the victim testified that she did not need the juice she was given because her blood sugar was not low, and thus, her faculties were not affected in any way. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient to support a requisite factual finding. State v. Caffrey , 08-717 (La. App. 5 Cir. 5/12/09), 15 So.3d 198, 203, writ denied , 09-1305 (La. 2/5/10), 27 So.3d 297.
Based on the foregoing, we find that a rational trier of fact could have found that the victim's identification of defendant as the perpetrator was sufficient under the Jackson standard to support defendant's convictions. This assignment of error lacks merit.
In his second assignment of error, Defendant argues the trial court erred in sentencing him for an offense for which he was not convicted. Specifically, defendant maintains that he was charged with and found guilty of aggravated burglary and second degree battery; however, in imposing the sentences for these convictions, the trial judge sentenced defendant on count one for "aggravated battery" to thirty years imprisonment at hard labor. Accordingly, defendant asserts that the thirty-year sentence imposed must be vacated and this matter remanded for resentencing.
The record reflects that when the trial judge sentenced defendant, he stated, "the sentence of this Court is, for aggravated battery , the Court is going to sentence you to thirty years at hard labor, Department of Corrections. For Count 2, for second degree battery, I sentence you to eight years at hard labor."
A review of the sentencing transcript clearly indicates that this was an inadvertent error and not an actual mistaken belief by the trial court. Specifically, immediately prior to sentencing defendant, in considering defendant's post-verdict judgment of acquittal and motion for new trial, the trial judge-who presided over the trial-discussed, at length, the facts of the case and reasons as to why the evidence supported defendant's convictions for aggravated burglary and second degree battery.
In State v. Session , 04-1325 (La. App. 5 Cir. 4/26/05), 902 So.2d 506, cited by defendant in his brief for the proposition that his sentence must be vacated, the defendant was convicted of attempted simple robbery. On appeal, the defendant pointed out that the trial judge referred to the wrong offense when he sentenced him, stating that the defendant had been convicted of attempted armed robbery rather than attempted simple robbery. This Court found nothing in the remainder of the sentencing transcript to indicate whether this was an inadvertent error in reference or an actual mistaken belief by the trial court. We further determined that the imposed sentence fell within the sentencing range for both offenses. This Court stated that, because it was impossible to determine that the sentence was not imposed in error *497 for the wrong offense, it had to be vacated. Id. , 902 So.2d at 507-08.
In State v. Williams , 10-265 (La. App. 5 Cir. 11/9/10), 54 So.3d 98, 101-02, the defendant was convicted of aggravated rape, and on appeal the defendant argued that his sentence must be vacated because at sentencing, the trial court stated it was imposing a life sentence for his aggravated battery conviction. However, in Williams , this Court found that although the sentencing transcript did not indicate whether the trial court's reference to the wrong offense was an inadvertent error or an actual mistaken belief, unlike Session , the imposed sentence of life imprisonment did not fall within the sentencing range for both offenses. Thus, this Court found the trial judge had made an inadvertent error when she referred to count one as aggravated battery rather than aggravated rape. Accordingly, this Court found defendant's sentence was not illegal, and the case did not require remand for resentencing.
In this case, the record reflects that the trial judge referred to the wrong offense when sentencing defendant on count one. The trial court stated that it was sentencing defendant on count one, aggravated battery , rather than the crime defendant was actually convicted of, aggravated burglary . However, unlike Session and Williams , the sentencing transcript in this case supports a finding that this was an inadvertent error in reference and not an actual mistaken belief by the trial court. Additionally, similar to Williams , the imposed sentence on count one of thirty years imprisonment at hard labor does not fall within the sentencing range for both offenses.[6] Thus, upon review of the record, we find the trial court made an inadvertent error when it referred to count one as aggravated battery rather than aggravated burglary, which does not require resentencing.
In his third assignment of error, defendant contends that the consecutive nature of his maximum sentences for his convictions renders his sentences constitutionally excessive. On March 16, 2018, defendant filed a motion to reconsider sentence, asserting generally that "[t]he sentence is excessive under both the state and federal constitutions." Defense counsel failed to object, in his written motion to reconsider sentence or orally following sentencing, to the consecutive nature of the sentences.
This Court has consistently held that a defendant's failure to state a specific ground upon which a motion to reconsider sentence is based, limits a defendant to a review of the sentence for constitutional excessiveness. La. C.Cr.P. art. 881.1(E) ; See also State v. Escobar-Rivera , 11-496 (La. App. 5 Cir. 1/24/12), 90 So.3d 1, 8, writ denied , 12-0409 (La. 5/25/12), 90 So.3d 411 ; State v. Williams , 10-265 (La. App. 5 Cir. 11/9/10), 54 So.3d 98, 103 ; State v. Dupre , 03-256 (La. App. 5 Cir. 5/28/03), 848 So.2d 149, 153, writ denied , 03-1978 (La. 5/14/04), 872 So.2d 509. Defendant failed to explicitly state an objection to the consecutive nature of his sentences in his motion to reconsider. Consequently, defendant is not entitled to review of the consecutive nature of his sentences in this appeal and is limited to a bare review of his sentences for constitutional excessiveness. State v. McGee , 04-963 (La. App. 5 Cir. 1/11/05), 894 So.2d 398, 412, writ denied , 05-0593 (La. 5/20/05), 902 So.2d 1050.
*498 The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Horne , 11-204 (La. App. 5 Cir. 2/14/12), 88 So.3d 562, 569, writ denied , 12-0556 (La. 6/1/12), 90 So.3d 437 ; State v. Wickem , 99-1261 (La. App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied , 00-31 (La. 2/16/01), 785 So.2d 839. The trial judge is afforded broad discretion in sentencing, and a reviewing court may not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D) ; State v. Berry , 08-151 (La. App. 5 Cir. 6/19/08), 989 So.2d 120, 131, writ denied , 08-1660 (La. 4/3/09), 6 So.3d 767 ; State v. Pearson , 07-332 (La. App. 5 Cir. 12/27/07), 975 So.2d 646, 656.
In reviewing a sentence for excessiveness, an appellate court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. Lobato , 603 So.2d 739, 751 (La. 1992). On review, an appellate court does not determine whether another sentence might have been more appropriate but whether the trial court abused its discretion. Pearson , 975 So.2d at 656 ; Horne , 88 So.3d at 569. In considering whether the trial court abused its discretion in sentencing a defendant, a reviewing court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes by other courts. Horne , 88 So.3d at 569.
Defendant was sentenced to the maximum sentence of thirty years imprisonment at hard labor for his aggravated burglary conviction and the maximum sentence of eight years at hard labor for his second degree battery conviction. See La. R.S. 14:60(B) and La. R.S. 14:34.1. The imposition of a sentence, although within the statutory limits, may still violate a defendant's constitutional right against excessive punishment. State v. Smith , 01-2574 (La. 1/14/03), 839 So.2d 1, 4.
At sentencing, the trial court considered the evidence presented at trial and stated the following:
Alright. Mr. Pike, I remember this trial; I remember the evidence which was presented, as you can tell by the argument we just had for the Motion for New Trial and Post-Verdict Judgment of Acquittal. It's the sentence of this Court, after consideration under the sentencing guidelines of 894.1, that I can't fathom anybody that would do that to an elderly lady; I can't. I don't even understand what would possess you to do that. People are taught to respect each other, and they're taught to respect their elders; at least that's the way it was-- as you can tell, I have the gray hair, that's the way I was raised. Alright? I was taught to, in any way if I lived in a neighborhood, to help someone who was in need of help, if it be cutting her grass, if it means cleaning her house, if it means taking in her groceries, anything that I could do to help someone in time of need. I can't even understand why someone who lived in a neighborhood could do this; I can't even fathom it.
Therefore, based on the evidence presented to me for what you did to Ms. Fazande, the physical damage and trauma that you caused to her, the fact that she was eighty-four, going on eighty-five years old at that time, that lady shouldn't have to worry about someone that lives in her neighborhood do this to her. She should be concentrating on every day she has left in her life to live it to the fullest that she wants.
*499 Therefore, I considered the sentencing guidelines under 894.1 of the Code of Criminal Procedure Article; and I believe that when you've been convicted of a felony, the Court should impose the sentence of imprisonment if any of the following circumstances exists: I believe there's an undue risk, that during the period of a suspended sentence or probation, you would commit another crime, under A l; A 2, the Defendant is in need of a correctional treatment or custodial environment that can be provided most effectively by his commitment to an institution; and, three, any lesser sentence would deprecate the seriousness of the Defendant's crime.
Other than certain other crimes that I consider in this Code, I can't imagine any crime being worse than beating an eighty-four year old person in their home to the point where they're unconscious and their face is swollen, and they wake up on the floor.
Considering the nature of the crime, the record reflects-as also reiterated by the trial court at sentencing-defendant kicked in the front door to a house of an elderly eighty-four-year-old victim, who was home alone at the time and familiar with defendant from the neighborhood. He beat her to the point of unconsciousness, causing her to wake up bloodied on the floor hours later with a swollen-shut eye and requiring transportation to the hospital for treatment of her injuries. These injuries caused lasting effects on the daily activities she once enjoyed.
Considering the nature of the crime and background of defendant and his criminal history[7] , the trial court was of the belief that defendant was at risk for recidivism and in need of correctional treatment in a custodial environment given the egregiousness of the crimes committed.
Lastly, similar sentences have been upheld for similar crimes by this Court and other courts for both aggravated burglary and second degree battery. See State v. Richard , 12-310 c/w 12-311 (La. App. 5 Cir. 4/24/13), 115 So.3d 86, writ denied , 13-1220 (La. 12/2/13), 126 So.3d 497 (where this Court found the defendant's thirty-year sentence for his aggravated burglary conviction imposed consecutive to a fifty-year sentence for his attempted second degree murder conviction was not excessive considering the record reflected the defendant committed a premeditated act, broke into the victim's home, armed himself, and violently attacked the victim. This Court further noted that the defendant had a criminal history which included crimes of violence); State v. Sharpley , 42,309 (La. App. 2 Cir. 6/20/07), 960 So.2d 1230 (where the defendant's thirty-year sentence for aggravated burglary under La. R.S. 14:60 was not excessive considering his conduct in breaking the elderly victim's facial bones and leaving her in critical condition); State v. Williams , 01-0998 (La. App. 3 Cir. 2/6/02), 815 So.2d 908, 915-16, writ denied , 02-0578 (La. 1/31/03), 836 So.2d 59 (affirming thirty-year sentence at hard labor for aggravated burglary conviction); See also State v. Chatman , 49,970 (La. App. 2 Cir. 6/24/15), 167 So.3d 1136, writ denied , *500 15-1422 (La. 9/6/16), 205 So.3d 916 ; State v. Lewis , 49,138 (La. App. 2 Cir. 6/25/14), 144 So.3d 1174 ; State v. Hall , 35,151 (La. App. 2 Cir. 9/26/01), 796 So.2d 164 ; State v. Thomas , 08-1280 (La. App. 3 Cir. 4/1/09), 7 So.3d 802, 806 ; State v. Smith , 452 So.2d 251, 252 (La. Ct. App. 1984) (where maximum sentence for second degree battery upheld when defendant kicked in an officer's patrol car window and the officer sustained injuries from the struggle). Accordingly, this assignment of error lacks merit.
In his fourth and fifth assignments of error, defendant argues his convictions for both aggravated burglary and second degree battery constitute double jeopardy. He maintains the evidence presented by the State showed that an intruder entered the victim's home with the intent to commit a felony and committed a battery resulting in serious bodily injury upon the victim while in her home. Thus, defendant contends that because the commission of the battery committed while inside the victim's home was used as an element of the offense for aggravated burglary and as the offense for second degree battery, he has been punished twice for one criminal act. Accordingly, he maintains his conviction and sentence for second degree battery, the less severely punished crime, must be vacated. Defendant further asserts that in the event this Court declines to reverse his conviction and sentence for second degree battery, he urges this Court to find that his trial counsel was ineffective in failing to preserve this error for review.
First, defendant's contention that his counsel was ineffective for failing to preserve any alleged double jeopardy issue for review lacks merit. While double jeopardy is most properly raised in a motion to quash, and defendant did not file a motion to quash, the issue is still properly before this Court as double jeopardy may be raised at any time. State v. Austin , 04-993 (La. App. 5 Cir. 3/1/05), 900 So.2d 867, 884, writ denied , 05-0830 (La. 11/28/05), 916 So.2d 143 ; State v. Gordon , 00-1013 (La. App. 5 Cir. 11/27/01), 803 So.2d 131, 150, writs denied , 02-0362 (La. 12/19/02), 833 So.2d 336, and 02-0209 (La. 2/14/03), 836 So.2d 134. Further, even if defendant's appellate counsel had not raised a double jeopardy argument on appeal, a violation of double jeopardy apparent on the face of the record is reviewable as an error patent. State v. Thomas , 50,929 (La. App. 2 Cir. 8/10/16), 201 So.3d 263, 278, writs denied , 16-1642 (La. 9/6/17), 224 So.3d 980 and 16-1862 (La. 9/22/17), 226 So.3d 441.
Next, as to defendant's double jeopardy argument, the Fifth Amendment to the United States Constitution, as well as Article I, § 15 of the Louisiana Constitution, prohibit placing a person twice in jeopardy of life or limb for the same offense. See also La. C.Cr.P. art. 591. Double jeopardy provisions are intended to protect an accused not only from a second prosecution for the same criminal act but also multiple punishments for the same act. State v. Lefeure , 00-1142 (La. App. 5 Cir. 1/30/01), 778 So.2d 744, 750, writ denied , 01-1440 (La. 9/21/01), 797 So.2d 669. However, it is well-settled that an accused who commits separate and distinct offenses during the same criminal episode or transaction may be prosecuted and convicted for each offense without violating the prohibition against double jeopardy. State v. Stevens , 18-344 (La. App. 5 Cir. 12/5/18), 260 So.3d 776, 783.
The protections against double jeopardy mandated by the federal constitution, as re-stated in this State's constitution, fall within the analytical framework set forth in Blockburger v. United States , 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) ; See State v. Frank , 16-1160 (La. 10/18/17), 234 So.3d 27. Under *501 Blockburger , the question is whether the same act or transaction constitutes a violation of two distinct statutory provisions. To determine whether there are two offenses or only one, the pertinent question is whether each provision requires proof of an additional fact which the other does not. State v. Knowles , 392 So.2d 651, 654 (La. 1980) ; State v. Bridgewater , 98-658 (La. App. 5 Cir. 12/16/98), 726 So.2d 987, 991. "[A] defendant can be convicted of two offenses arising out of the same criminal incident if each crime contains an element not found in the other." State v. Hampton , 17-383 (La. App. 3 Cir. 11/15/17), 259 So.3d 1125, 1132 (quoting State v. Frank , 234 So.3d at 30 ).
Notably, Louisiana courts previously utilized two tests to analyze double jeopardy claims: (1) the "distinct fact" or Blockburger test, set forth supra ; and (2) the "same evidence" test. State v. Fairman , 15-67 (La. App. 5 Cir. 9/23/15), 173 So.3d 1278, 1289. The same evidence test is broader in concept than the Blockburger test. State v. Lefeure , 778 So.2d at 751. However, the same evidence test previously utilized by Louisiana courts to determine whether two crimes constituted the "same offense" for purposes of double jeopardy was recently rejected by the Louisiana Supreme Court in Frank , supra , which proclaimed that "the protections against double jeopardy mandated by the federal constitution, as restated in this State's constitution, fall within the analytical framework set forth in Blockburger and Louisiana courts need only apply that framework in analyzing questions of double jeopardy." See Frank , 234 So.3d at 33-34. Thus, the Louisiana Supreme Court has instructed Louisiana courts to dispense with the Louisiana's separate "same evidence" test. See State v. Stevens , 18-344 (La. App. 5 Cir. 12/5/18), 260 So.3d 776.
Under Blockburger , courts are required to compare the two criminal statutes at issue and ask "whether each provision requires proof of an additional fact which the other does not." United States v. Singleton , 16 F.3d 1419, 1422 (5th Cir. 1994). If either statute contains no element not also found in the other statute, the statutes "fail" the Blockburger test and the defendant may not be punished under both of them "in the absence of a clear indication of contrary legislative intent." Id. The two statutory offenses need not be identical to constitute the same offense for double jeopardy purposes. The Blockburger inquiry focuses on the statutory elements of the offenses, not on their application to the facts of the specific case before the court or on the actual evidence presented at trial. Illinois v. Vitale , 447 U.S. 410, 416, 100 S.Ct. 2260, 2265, 65 L.Ed. 2d 228 (1980).
Thus, the question under Blockburger is not whether this violation of a certain criminal statute also constituted a violation of a second criminal statute in this case, but whether all violations of the former constitute violations of the latter. United States v. Singleton , 16 F.3d at 1422 ; see also United States v. Corona , 108 F.3d 565, 572 (5th Cir. 1997) (determining whether statutory offenses are separate for double jeopardy purposes involves parsing the statutes apart from the facts of any particular case).
Here, defendant was charged and convicted of aggravated burglary, in violation of La. R.S. 14:60, and second degree battery, in violation of La. R.S. 14:34.1.
Aggravated burglary is defined in La. R.S. 14:60 as follows:
Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with *502 the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.
Therefore, in order to prove the crime of aggravated burglary, the State must prove beyond a reasonable doubt that the defendant made an unauthorized entry of a structure with the intent to commit a theft or a felony. Additionally, the State must prove beyond a reasonable doubt one of the three aggravating circumstances listed in La. R.S. 14:60. Based on the record, it is apparent that the State sought to prove the third aggravating circumstance under La. R.S. 14:60(3) by proving that defendant committed a battery upon the victim, Ms. Fazande, while in her home, after having unlawfully entered it with the intent to commit a felony or theft therein. To prove a "battery" to satisfy the third aggravating circumstance under the aggravated burglary statute, the State must prove "intentional use of force or violence upon the person of another." La. R.S. 14:34.
However, to support a conviction for second degree battery under La. R.S. 14:34.1, the State must additionally prove that said battery resulted in "serious bodily injury," which is statutorily defined as "bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death." La. R.S. 14:34.1(B)(3). Therefore, a conviction for second degree battery requires proof of an "additional fact" or element, i.e. , "serious bodily injury" as statutorily defined, not required to prove the "battery" as contemplated under the aggravated burglary statute, La. R.S. 14:60. Therefore, we find that, applying the Blockburger test, convictions for aggravated burglary and second degree battery arising out of the same transaction or act do not constitute double jeopardy. See also State v. Helou , 02-2302 (La. 10/23/03), 857 So.2d 1024, 1030 (wherein the Louisiana Supreme Court found the evidence against the defendant insufficient to prove "serious physical injury" as contemplated under the second degree battery statute but entered a conviction for simple battery, which it found to be a responsive verdict to second degree battery); Compare also State v. Carter , 09-2345 (La. 10/28/09), 21 So.3d 264, 265 (wherein the Louisiana Supreme Court distinguished between aggravated battery and second degree battery finding that, a conviction for aggravated battery "requires neither the infliction of serious bodily harm nor the intent to inflict serious injury," as is required to support a conviction for second degree battery, citing State v. Howard , 94-0023 (La. 6/3/94), 638 So.2d 216, 217 ). This assignment of error lacks merit.
In his sole pro se assignment of error, defendant argues the trial court erred in denying his motion to declare La. C.Cr.P. art. 782(A) unconstitutional for allowing non-unanimous verdicts in his felony case. Defendant points out that Article 782(A) provides that ten of twelve jurors must concur to render a verdict in cases where punishment is necessarily confinement at hard labor. Defendant argues that a non-unanimous verdict violates due process and the U.S. Sixth and Fourteenth Amendments and has a discriminatory impact on African-American defendants.
The record reflects that defendant filed his Motion to Declare Article 782(A) Unconstitutional *503 in the trial court on February 24, 2018. The trial judge denied the motion prior to the start of trial on February 27, 2018, and defendant objected to the ruling. After the verdicts were announced, however, the jury was not polled. When the trial court asked defense counsel if he had any motions, defense counsel responded, "[a]t this time, no, Your Honor." The court then adopted the verdicts of the jury as the judgment of the court. Because polling was not requested, the record does not reflect whether defendant was convicted based on a unanimous or non-unanimous verdict.
In State v. Wade , 10-997 (La. App. 5 Cir. 8/30/11), 77 So.3d 275, 281-82, this Court explained that "[i]t stands to reason that defendant cannot complain of a non-unanimous conviction if he was convicted by a unanimous jury." In Wade , there was no evidence in the record to show whether a non-unanimous jury convicted the defendant because the defense counsel did not request the jury be polled, and there were no juror slips in the record or in evidence. Id. Also, in Escobar-Rivera , 90 So.3d at 7, there was no evidence in the record to indicate whether a non-unanimous jury convicted the defendant because the defense counsel did not request that the jury be polled nor were there any juror slips in the record. Thus, this Court found the defendant could not complain of a non-unanimous jury conviction.
Accordingly, as in Wade and Escobar-Rivera , supra , we find defendant is precluded from raising this issue on appeal because it is unknown whether he was in fact convicted by a unanimous jury.[8]
ERRORS PATENT
The record was reviewed for errors patent, according to La. C.Cr.P. art. 920 ; State v. Oliveaux , 312 So.2d 337 (La. 1975) ; and State v. Weiland , 556 So.2d 175 (La. App. 5 Cir. 1990). The review reveals no errors patent in this case.
DECREE
For the foregoing reasons, defendant's convictions and sentences are affirmed.
AFFIRMED

On September 14, 2017, a hearing on defendant's motions to suppress identification and statement were heard and denied.

Tammy Anderson testified that she is a friend of the victim and was with the victim at the hospital when Detective Koppeis presented the victim with the photographic lineup. She confirmed that she observed the victim pick a photograph from the lineup and that she signed the lineup as a witness.

The testimony reflects that Deborah Fazande called the neighbor Sabrina Knapper, who was not home but called her son and asked him to check on the victim.

The victim testified that she did not need the juice she was given because her blood sugar was not low, and thus, her faculties were not affected in any way.

Further, the victim's testimony that she recognized defendant from seeing him around the neighborhood is also a substantial factor favoring the reliability of the identification. See State ex rel. W.H. , 10-1418 (La. App. 4 Cir. 4/6/11), 62 So.3d 839, 846 ("[T]hese inconsistencies fail to demonstrate sufficient indicia of unreliability to outweigh the fact that [the witness] and [the defendant] were familiar with one another."); State v. Peters , 10-0326 (La. App. 4 Cir. 2/16/11), 60 So.3d 672, 679, writ denied , 11-0494 (La. 9/30/11), 71 So.3d 279 ("Here, the likelihood of misidentification is not present. There is no question that [the victim] knew her assailant as the appellant lived for many years two houses down from her.").

An aggravated burglary conviction carries a penalty of one to thirty years imprisonment at hard labor, whereas an aggravated battery conviction carries a penalty of imprisonment, with or without hard labor, for not more than ten years. See La. R.S. 14:60 ; La. R.S. 14:34.1.

The record also contains a multiple bill of information, alleging defendant to be a second-felony offender for having previously violated La. R.S. 14:68.4 relative to unauthorized use of a motor vehicle. On October 10, 2018, the trial court adjudicated defendant a multiple offender, vacated his sentence for the aggravated burglary conviction on count one, and resentenced defendant as a second-felony offender under La. R.S. 15:529.1, to sixty years imprisonment at hard labor. The official record reflects that defendant has not filed an appeal from his multiple offender adjudication or sentence, which he may seek upon the filing of an application for post-conviction relief requesting an out-of-time appeal.

Nevertheless, even if we were to consider this assignment of error, the Louisiana Supreme Court has previously addressed this issue and found no constitutional violation. See State v. Jones , 381 So.2d 416, 418 (La. 1980) ; State v. Simmons , 414 So.2d 705, 707 (La. 1982) ; State v. Bertrand , 08-2215 (La. 3/17/09), 6 So.3d 738, 741.